IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01983-RM-NRN

WILLIAM POWELL, individually and on behalf of all others similarly situated,

Plaintiff,

v.

THE KROGER COMPANY; and
DILLON COMPANIES, LLC a/k/a KING SOOPERS, INC. d/b/a KING SOOPERS/CITY MARKET,

Defendants.

---

**REPORT AND RECOMMENDATION ON
PLAINTIFFS' OMNIBUS MOTION AND MEMORANDUM OF LAW FOR
CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE
(DKT. #15)**

---

**N. REID NEUREITER
United States Magistrate Judge**

This Fair Labor Standards Act ("FLSA") case is before the Court pursuant to an Order (Dkt. #22) issued by Judge Raymond P. Moore referring Plaintiff William Powell and Opt-in Plaintiffs Raymundo Estrada and Amanda Palko's ("Plaintiffs") Omnibus Motion and Memorandum of Law for Conditional Certification and Court-Authorized Notice. Dkt. #15. The Kroger Company and Dillon Companies, LLC a/k/a King Soopers, Inc. d/b/a King Soopers/City Market ("King Soopers" or "Defendants") filed a Response. Dkt. #30. Plaintiffs filed a Reply. Dkt. #32. On October 27, 2020, the Court heard argument from the Parties. *See* Dkt. #37. The Court has taken judicial notice of the Court's file, considered the applicable Federal Rules of Civil Procedure and case law, and **RECOMMENDS** that the motion be **GRANTED**.

## BACKGROUND

William Powell filed the Class and Collective Action Complaint ("Complaint") (Dkt. #1) on July 7, 2020, alleging that King Soopers violated the FLSA and Colorado Wage and Hour Laws by failing to pay its Assistant Store Managers ("ASM") overtime compensation.[1] Plaintiffs now seek conditional certification in order to send notice of this lawsuit to all current and former ASMs and provide them with an opportunity to join.

King Soopers employs ASMs in more than 150 stores in Colorado, New Mexico, Utah, and Wyoming. Dkt. #1 at 2, ¶ 2. Despite their title, ASMs spend the vast majority of their time performing the duties of hourly workers, such as helping customers, moving freight, stocking shelves, building displays, counting inventory, cleaning the store, and acting as cashiers; rather than performing managerial functions like hiring, firing, scheduling, or disciplining other employees. *Id.* 7–8, ¶¶ 41–43. King Soopers improperly classifies them as exempt employees in order to avoid paying them overtime compensation. *Id.* at 2–3, ¶¶ 5–6.

Mr. Powell and Opt-in Plaintiffs Estrada and Palko allege that they and the members of the ASM Collective are similarly situated in that they have substantially similar job duties and are subject to King Soopers' centralized, company-wide compensation policies, patterns, and/or practices. *Id.* at 8, ¶¶ 46–47. Plaintiffs filed declarations in support of the Motion for Conditional Certification. *See* Dkt. ## 15-2, 15-3, & 15-4. They state that 80% – 90% of the time they worked as ASMs, they performed

---

[1] The Court makes the initial determination of whether a FLSA collective action may be maintained based on the allegations in the operative complaint and any supporting affidavits filed by the plaintiff. *Norwood v. WBS, Inc.,* No. 15-cv-00622-MSK-KMT, 2016 WL 7666525, at *1 (D. Colo. Sept. 29, 2016).

the non-exempt work described above, and that managerial functions were primarily performed by Store Managers, to whom ASMs report. *Id.* King Soopers has a uniform job posting and job description for the ASM position. *Id.* All new ASMs, everywhere in the country, undergo the same 8 to 12-week corporate training called "Leadership Essentials." *Id.* ASMs receive a salary and annual bonuses and are scheduled to work at least 45 hours per week. *Id.* They often work through lunch and perform additional manual labor because overtime is rarely approved for the hourly-paid employees. *Id.* As a result, on average ASMs work between 50 to 60 hours each week. *Id.* They are not required to record the hours they work each week. *Id.* According to Plaintiffs, King Soopers, through extensive policies and procedures, maintains strict control, oversight, and direction over the work performed by ASMs.

Plaintiffs seek the conditional certification of the following collective:

All current and former "Assistant Store Managers" who worked for King Soopers/City Market in the United States at any time on or after July 7, 2017 to the present who were classified as exempt from overtime compensation (the "ASM Collective").

They also request that notice to be distributed via first class mail, e-mail, and text message, and submission of consent forms via website.

## STANDARD OF REVIEW

The FLSA provides that "an action to recover [unpaid overtime pay] may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). "[N]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* This type of collective action is different than a Rule 23 class

3

action in that under Rule 23; class members are considered to have joined the action unless they have affirmatively opted out of it, while in an FLSA collective action, putative plaintiffs must affirmatively opt into the litigation in order to be joined. *Saarela v. Union Colony Protective Servs., Inc.*, No. 13-CV-01637-MSK-MJW, 2014 WL 3408771, at *2 (D. Colo. July 14, 2014).

Judge Moore has described the conditional certification process for FLSA collective actions as follows:

> The Tenth Circuit has approved the use of a two-step process for determining whether putative class members are similarly situated to the named plaintiff. In *Thiessen v. General Electric Capital Corp.*, the court outlined the case by case or "ad hoc" method as follows: at the first step, prior to discovery, the district court makes a "notice stage" determination of whether the plaintiffs are similarly situated. 267 F.3d 1095, 1105 (10th Cir. 2001). For conditional certification at the notice stage, the Tenth Circuit "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1102. "The standard for certification at this stage is a lenient one." *Boldozier v. Am. Family Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092 (D. Colo. 2005). At this stage, "a court need only consider the substantial allegations of the complaint along with any supporting affidavits of declarations." *Smith v. Pizza Hut, Inc.*, No. 09–CV–01632–CMA–BNB, 2012 WL 1414325 (D. Colo. Apr. 21, 2012) (quoting *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 434 (D. Kan. 2007)).
>
> In the second stage, which comes at the conclusion of discovery and often in the context of a defense motion to decertify the class, the court applies a stricter standard of "similarly situated," including application of at least four factors, to determine whether the case can proceed as a class action. *Thiessen*, 267 F.3d at 1102–03; *Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1132–33 (D. Colo. 2011).

*Lysyj v. Milner Distrib. All., Inc.*, No. 13-CV-01930-RM-MJW, 2014 WL 273214, at *2–3 (D. Colo. Jan. 24, 2014).

**ANALYSIS**

### Similarly Situated

King Soopers argues that conditional certification is improper for three reasons. First, it contends that Plaintiffs' deposition testimony demonstrates that their job duties as ASMs differed dramatically from one other, to say nothing of other putative class members. For instance, Plaintiff Estrada was left in charge of the store when the Store Manager was absent, a responsibility never given to Plaintiff Palko. Similarly, Mr. Estrada was involved in interviewing prospective employees, while Mr. Powell was not. Mr. Powell, meanwhile, testified that other management level employees reported to him; apparently no one reported to Ms. Palko

Second, King Soopers contends that Plaintiffs cannot rely on any corporate written materials (such as job postings, job descriptions, company policies and handbooks) to establish that they are similarly situated because Plaintiffs concede that the written materials bore no relationship to their actual job duties as ASMs.

Finally, King Soopers asks the Court to disregard Plaintiffs' declarations as vague and conclusory.

None of King Soopers' arguments are persuasive.

First, according to Plaintiffs' declarations, which are based on personal knowledge and therefore not conclusory, as ASMs, they are subject to King Soopers' corporate policies that require them to routinely work more than 40 hours per week, but because they are salaried employees, they are classified as exempt and thus not eligible for overtime compensation, even though they are primarily performing the same work as hourly employees, including helping customers, moving freight, stocking

5

shelves, building displays, counting inventory, cleaning the store, and otherwise standing in as cashiers or stockers. These allegations are sufficient to meet the lenient burden at the conditional certification stage. *See Grady v. Alpine Auto Recovery LLC*, No. 15-cv-00377-PAB-MEH, 2015 WL 3902774, at *2 (D. Colo. June 24, 2015) ("Generally, where putative class members are employed in similar positions, the allegation that defendants engaged in a pattern or practice of not paying overtime is sufficient to allege that plaintiffs were together the victims of a single decision, policy or plan.") (citation omitted); *Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1133 (D. Colo. 2011) (finding allegations by plaintiff that he did not receive overtime pay and that he believed others did not receive overtime pay, coupled with his declaration and that from one other employee, sufficient to meet burden for conditional certification). Although King Soopers "seeks to derail conditional certification by leaning on potential minor variances in the individual circumstances of particular Plaintiffs that might set them apart from" the putative collective, "'the predominance of individual questions is only relevant at the post-discovery stage of the collective action certification.'" *Davis v. Vitamin Cottage Natural Food Markets Inc.*, No. 17-cv-01301-CMA-MEH, Dkt. #34 (D. Colo. Dec. 20, 2017) (quoting *Smith v. Pizza Hut, Inc.*, No. 09-CV-01632-CMA, 2012 WL 1414325 at *6 (D. Colo. Apr. 21, 2012)). "The court does not weigh evidence, resolve factual disputes, or rule on the merits of plaintiffs' claims during the notice stage." *Levine v. Vitamin Cottage Natural Food Markets, Inc.*, No. 1:20-cv-00261-STV (D. Colo. Nov. 6, 2020) (citation and alterations omitted).

The Court must likewise reject King Soopers' contention that Plaintiffs cannot use uniform, written corporate materials to show they are similarly situated: "Courts have

6

granted conditional certification based on a common job description even though the description did not accurately describe the plaintiffs' job duties." *Kujat v. Roundy's Supermarkets Inc.*, No. 18 C 5326, 2019 WL 1953107, at *4 (N.D. Ill. May 2, 2019). Again, the Court makes the conditional certification determination relying upon the allegations in the Complaint and Plaintiffs' declarations, *see Norwood*, 2016 WL 7666525, at *1, which sufficiently establish that ASMs are subject to the same training, job description, job posting, job duties, employee policies, and compensation. This is enough to satisfy the conditional certification standard. Any investigation into the merits of Plaintiffs' claims must wait until second, post-discovery stage.

Plaintiffs have set forth substantial allegations that the putative ASM class members are similarly situated as the victims of King Soopers' common policy, practice, or plan of misclassifying them as exempt and not paying them overtime compensation.

### Notice to Conditional Class

Because the Court concludes that conditional certification of an FLSA collective action is appropriate, it may authorize plaintiff to disseminate a proper notice and opt-in consent form to putative class members. *Hoffman–LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989). *See also* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). The Court has broad discretion regarding the details of the notice sent to potential opt-in plaintiffs. *Hoffman–LaRoche*, 493 U.S. at 171. "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide accurate and timely notice concerning the pendency of the collective action, so that potential plaintiffs can make

informed decisions about whether to participate." *Grady*, 2015 WL 3902774, at *3 (alterations and citation omitted).

King Soopers objects to Plaintiffs' requests to (1) send notice by text message; (2) require King Soopers to post the notice in its stores; (3) and allow reminder notices halfway through the opt-in period. As to notification via text message, this has been approved by judges in this District, including the undersigned. *See e.g., MacDonald v. Covenant Testing Techs., LLC*, No. 18-cv-02290-NRN, 2019 WL 1755282, at *7 (D. Colo. Apr. 18, 2019) (permitting notice to be sent by U.S. Mail, email, and text); *Warren v. MBI Energy Servs., Inc.*, No. 19-cv-00800-RM-STV, 2020 WL 937420, at *9 (D. Colo. Feb. 25, 2020), *report and recommendation adopted in part*, No. 19-cv-00800-RM-STV, 2020 WL 5640617 (D. Colo. Sept. 22, 2020) (the same). Furthermore, the Court finds that notice should be posted in King Soopers employee breakrooms or other, non-public locations, as this will reach a wider audience than mailing, especially given the COVID-19 pandemic's disproportionate effects on grocery store workers. *See Robertson v. Whitman Consulting Org., Inc.*, No. 19-cv-02508-RM-KLM, 2020 WL 5097597, at *5 (D. Colo. July 22, 2020) (recommending that defendant be required to post the notice and consent form on all jobsites where putative class members are currently working); *later modified at* 2020 WL 5096006 (D. Colo. Aug. 28, 2020). However, the Court will not authorize a reminder notice, as a reminder notice may "improperly suggest the Court's endorsement of [p]laintiff's claims." *Bagoue v. Developmental Pathways, Inc.*, No. 16-cv-01804-PAB-NRN, 2019 WL 1358842, at *4 (D. Colo. Mar. 25, 2019). *See also Whittington v. Taco Bell of America, Inc.*, No. 10-cv-01884-KMT-MEH, 2012 WL 1622457, at *2 (D. Colo. May 9, 2012) (noting that "even the mere appearance of

judicial endorsements of the merits of this action is improper" (internal quotations and alterations omitted)).

Finally, King Soopers requests at least 30 days to provide information about the putative collective, rather than the seven days called for by Plaintiffs. Plaintiffs indicate that they are willing to meet-and-confer with Defendants regarding the time period they need to produce the requested information for the members of the ASM Collective. However, they ask the Court to extend the end date of the time period for the putative ASM Collective to the date which Defendants provide the requested information to Plaintiffs. The Court finds this to be a reasonable position.

## CONCLUSION

For the reasons set forth above, it is hereby **RECOMMENDED** that Plaintiffs' Omnibus Motion and Memorandum of Law for Conditional Certification and Court-Authorized Notice (Dkt. #15) be **GRANTED** and that Plaintiffs' proposed Order (Dkt. #15-11) be entered with the following modifications: (1) that the requirement that "[t]he Notice shall also, thirty (30) days after it was originally distributed, be re-sent to those members of the ASM Collective who have not returned "Consent To Join" forms" be **eliminated**; and (2) that the FLSA statute of limitations for the opt-in plaintiffs in this case be equitably tolled until 90 days after the opt-in plaintiffs receive notice of this lawsuit.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections**

**within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corrections*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

BY THE COURT

Date:  November 17, 2020
       Denver, Colorado

N. Reid Neureiter
United States Magistrate Judge